UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NOSIRRAH MANAGEMENT, LLC,

                               **Plaintiff,**

   - against -

EVMO, INC., f/k/a YayYo, Inc. and Rideshare Rental, Inc.,

                             **Nominal Defendant,**

   - and -

RAMY EL-BATRAWI, and X, LLC,

                              **Defendants.**

Case No. 1:21-cv-10529

COMPLAINT FOR RECOVERY OF SHORT-SWING PROFITS UNDER 15 U.S.C. § 78p(b) [SECTION 16(b) OF THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED]

JURY TRIAL DEMANDED

---

Plaintiff Nosirrah Management, LLC ("Plaintiff"), by its attorneys, alleges upon knowledge of its own acts, and upon information and belief as to the acts of others, as follows:

1. This is an action to recover "short swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "1934 Act"), 15 U.S.C. § 78p(b).

## JURISDICTION AND VENUE

2. This Court has jurisdiction under Section 27 of the 1934 Act, 15 U.S.C. § 78aa.

3. Venue is proper in this district because some of the transactions giving rise to liability as alleged herein occurred or were executed on exchanges and/or through market-makers located in New York, New York.

## PARTIES

4. Plaintiff, a Delaware limited liability company, is a shareholder of Nominal Defendant EVmo, Inc. ("EVmo").

5. Upon information and belief, Nominal Defendant EVmo, Inc. (formerly known as Rideshare Rental, Inc. and as YayYo, Inc.) is a holding company operating principally through two wholly-owned subsidiaries – Rideshare Car Rentals LLC, which offers an online bookings platform, and Distinct Cars, LLC, which maintains a fleet of passenger vehicles and transit vans for rent to drivers in the ridesharing and delivery gig industries – and is a Delaware corporation with its principal place of business at 433 North Camden Drive, Suite 600, Beverly Hills, CA 90210. This action is brought in the right and for the benefit of EVmo, which is named as a defendant solely to bring all necessary parties before the Court.

6. Upon information and belief, Defendant Ramy El-Batrawi served as a director and chief executive officer of EVmo from February 2020 to February 26, 2021 and is a resident of California.

7. Upon information and belief, Defendant X, LLC is a Delaware limited liability company wholly owned and controlled by El-Batrawi. Defendants Ramy El-Batrawi and X, LLC are referred to herein individually and collectively as "Defendant El-Batrawi."

BACKGROUND FACTS

8. At all relevant times, the common stock issued by EVmo was registered under Section 12(g) of the 1934 Act, 15 U.S.C. § 78l.

9. On January 12, 2021, a Form 4 "Statement of Changes in Beneficial Ownership" (the "January 12 Form 4") was filed with the Securities and Exchange Commission ("SEC") by Defendant El-Batrawi. The January 12 Form 4 reported a purchase of 5,000,000 shares of EVmo common stock made on January 8, 2021 (the "January 8 Purchase"):

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 01/08/2021 | | J(1) | | 5,000,000 | A | $3 | 8,297,195 | I(2) | See Footnote 2 |

10. The January 8 Purchase was described in a footnote to the January 12 Form 4 as follows:

> The securities reported herein were sold by the Reporting Person in consideration of a promissory note, pursuant to a stock purchase agreement entered into in September 2019, prior to the Issuer's initial public offering in November 2019. The parties have agreed to cancel the promissory note and return the securities to the Reporting Person.

11. The price per share indicated in the January 12 Form 4 was $3 per share, for an apparent aggregate amount of $15,000,000.

12. On information and belief, the reported $3 price per share for the January 8 Purchase reflected a calculation of 5,000,000 shares in exchange for a promissory note whose principal amount was $15,000,000. As explained more fully in Paragraphs 14 and 15 below, this calculation does not reflect a realistic characterization of the exchange and the price of the shares.

13. On information and belief, based in part on representations of EVmo by its counsel, Withersworldwide, the shares that Defendant El-Batrawi purchased as described in the January 12 Form 4 were shares that he had previously sold to the seller, in September 2019, approximately two months before EVmo's initial public offering, at a price of $3 per share.

14. On January 8, 2021, the public trading price per share of the EVmo common stock ranged between $0.56 and $0.82, the average of which is $0.69.

15. In view of the clearly diminished value of the shares that were transferred when the note was cancelled and the absence of any explanation as to why the full principal value and interest of the promissory note were not repaid, the transactions of January 8, 2021 should be

considered (i) an acquisition of 5,000,000 shares at their fair market value (between $0.56 and $0.82 per share) – for an aggregate amount between $2,800,000 and $4,100,000, or $3,450,000 if the average price for the day is used – and (ii) a cancellation or forgiveness by Defendant El-Batrawi of the balance of the promissory note. (Alternatively, the acquisition of the shares was an acquisition of 5,000,000 shares at a price of $3 in full exchange for the promissory note.)

16. On information and belief, and based on subsequent disclosures filed with the SEC, on several subsequent dates within the following six months, Defendant El-Batrawi sold a total of no fewer than 6,344,000 shares of EVmo common stock.

17. On March 5, 2021, a Form 4 "Statement of Changes in Beneficial Ownership" (the "March 5 Form 4") was filed with the SEC by Defendant El-Batrawi. The March 5 Form 4 reported a sale of 6,000,000 shares of EVmo common stock made on February 26, 2021 (the "February 26 Sale"):

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/26/2021 | | S | | 6,000,000 | D | $0.8333 | 2,297,195 | I | See footnote[2] |
| Common Stock | 03/01/2021 | | C[1] | | 960,550 | A | $0.215[2] | 3,257,745 | I | See footnote[3] |
| Common Stock | 03/02/2021 | | G | | 100,000 | D | $0 | 3,157,745 | I | See footnote[3] |

18. On information and belief, the February 26 Sale was a sale of that block of shares to Acuitas Group Holdings, LLC ("Acuitas"), which caused Acuitas to become the largest and controlling shareholder in EVmo and was accompanied, as a condition to closing, by El-Batrawi's resignation from his positions as chief executive officer and a director of EVmo.

19. On information and belief, El-Batrawi continued to own shares of EVmo, and owned 2,865,489 shares as late as April 9, 2021, which represented approximately 8% of the total number (35,370,899) of outstanding shares of EVmo.

20.  The January 8 Purchase combined with other purchases and with sales of shares within a period of six months, earned El-Batrawi short swing profits that must be disgorged to EVmo under Section 16.  The following charts show how these transactions should be matched.  The first set of charts reflects a purchase price in the January 8 Purchase of $0.69 per share (the average between $0.56 and $0.82 per share as referred to in Paragraphs 14 and 15 above), and the second set of charts reflects a purchase price in the January 8 Purchase of $3.00 per share.

Matching Based on Purchase Price of $0.69 per share:

### Matched Transactions

| Transaction Date | Transaction | No. Shares Purchased/Sold | Price/Share |
|---|---|---|---|
| December 22, 2020 | Purchase | 26,495 | $0.47 |
| January 8, 2021 | Purchase | 5,000,000 | $0.69 |
| February 26, 2021 | Sale | 6,000,000 | $0.83 |
| April 5, 2021 | Sale | 104,522 | $3.79 |
| April 6, 2021 | Sale | 41,378 | $3.82 |
| April 7, 2021 | Sale | 81,286 | $3.57 |
| April 8, 2021 | Sale | 65,070 | $3.39 |
| April 9, 2021 | Sale | 51,744 | $3.11 |

### Matching Steps

| | Matched Purchase Date | Purch. Price | Matched Sale Date | Sale Price | No. Shares Matched | Profit from Match | Profit Subtotal |
|---|---|---|---|---|---|---|---|
| 1. | Dec. 22, 2020 | $0.47 | April 6, 2021 | $3.82 | 26,495 | $ 88,809 | $    88,809 |
| 2. | January 8, 2021 | $0.69 | Feb. 26, 2021 | $0.83 | 4,682,4 | $671,002 | $  759,810 |
| 3. | January 8, 2021 | $0.69 | April 9, 2021 | $3.11 | 51,744 | $125,220 | $  885,031 |
| 4 | January 8, 2021 | $0.69 | April 8, 2021 | $3.39 | 65,070 | $175,689 | $1,060,720 |
| 5. | January 8, 2021 | $0.69 | April 7, 2021 | $3.57 | 81,286 | $234,104 | $1,294,823 |
| 6. | January 8, 2021 | $0.69 | April 5, 2021 | $3.79 | 104,52 | $324,018 | $1,618,841 |
| 7. | January 8, 2021 | $0.69 | April 6, 2021 | $3.82 | 14,883 | $ 46,584 | **$1,665,425** |

Matching Based on Purchase Price of $3.00 per share:

## Matched Transactions

| Transaction Date | Transaction | No. Shares Purchased or | Price/Share |
|---|---|---|---|
| December 22, 2020 | Purchase | 26,495 | $0.47 |
| January 8, 2021 | Purchase | 5,000,000 | $3.00 |
| April 5, 2021 | Sale | 104,522 | $3.79 |
| April 6, 2021 | Sale | 41,378 | $3.82 |
| April 7, 2021 | Sale | 81,286 | $3.57 |
| April 8, 2021 | Sale | 65,070 | $3.39 |
| April 9, 2021 | Sale | 51,744 | $3.11 |

## Matching Steps

|   | Matched Purchase Date | Purch. Price | Matched Sale Date | Sale Price | No. Shares Matched | Profit from Match | Profit Subtotal |
|---|---|---|---|---|---|---|---|
| 1. | Dec. 22, 2020 | $0.47 | April 9, | $3.11 | 26,495 | $69,997 | $ 69,997 |
| 2. | January 8, 2021 | $3.00 | April 9, | $3.11 | 25,249 | $ 2,777 | $ 72,775 |
| 3. | January 8, 2021 | $3.00 | April 8, | $3.39 | 65,070 | $25,377 | $ 98,152 |
| 4. | January 8, 2021 | $3.00 | April 7, | $3.57 | 81,286 | $46,333 | $144,485 |
| 5. | January 8, 2021 | $3.00 | April 5, | $3.79 | 104,522 | $82,572 | $227,057 |
| 6. | January 8, 2021 | $3.00 | April 6, | $3.82 | 41,378 | $33,930 | **$260,987** |

21. On information and belief, EVmo has pursued recovery of short swing profits from Defendant El-Batrawi based on some of the purchases and sales but has refused to pursue recovery based on the January 8 Purchase on the asserted basis that the January 8 Purchase is not covered by Section 16 because those shares were "acquired in good faith in connection with a debt previously contracted."

22. EVmo's counsel stated in an email on August 6, 2021, regarding Defendant El-Batrawi:

> [H]aving decided to step down from all management roles with the Company, he wanted to sever all his ties with the Company. This would naturally include and did include resolving the default under the Note issued in connection with prior purchase of shares from him by the obligor under the Note, exercising all his stock options, and divesting all his holdings in

the Company. . . . There is simply no evidence of the absence of good faith here.

23. Defendant El-Batrawi's January 8 Purchase does not fit within the good faith acquisition exception in Section 16 because, as EVmo's counsel has conceded, at the time that Defendant El-Batrawi acquired 5,000,000 shares on January 8, 2021, he was aware that he would have to dispose of these shares.

24. The explanation that El-Batrawi "wanted to sever all his ties with the Company" is also inconsistent with his retention of shares representing 8% of the outstanding shares of EVmo.

25. The January 8 Purchase and the February 26 Sale and other purchases and sales resulted in Defendant El-Batrawi's realizing a profit of (i) no less than $1,665,425 calculated using the "lowest-in, highest-out" method, if the purchase price for the January 8 Purchase is deemed to be $0.69 per share based on actual fair market value of the shares on the day of the acquisition using the average between highest and lowest trading prices (and Defendant El-Batrawi is deemed to have cancelled the balance of the Note) or (ii) no less than $260,987 calculated using the "lowest-in, highest-out" method, if the purchase price for the January 8 Purchase is deemed to be $3.00 per share as asserted in the March 5 Form 4.

26. This action is brought within two years of the violations described in this Complaint or within two years of the time when the transactions were disclosed in SEC filings as required by Section 16(a) of the 1934 Act, 15 U.S.C. § 78p(a).

## CLAIM FOR RELIEF
(Recovery of Profits Under Section 16(b) of the 1934 Act)

27. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

28. Defendant El-Batrawi purchased and sold EVmo common stock within a six-month period.

29. Defendant El-Batrawi realized profits possibly as high as $1,665,425 in connection with this purchase and sale.

30. As chief executive officer and a director of EVmo, Defendant El-Batrawi was an EVmo insider subject to Section 16(b) of the 1934 Act, 15 U.S.C. § 78p(b), at the time of the purchase and up to the sale of the EVmo stock, and under Rule 16-a(2)(b), 17 CFR § 240.16a-2(b), transactions within six months after he ceased to be an officer and director can be matched subject to Section 16(b) with transactions that occurred while he was a director.

31. As of the date of this Complaint, Defendant El-Batrawi has failed to account for and disgorge the entirety of his short swing profits from the January 8 Purchase and the February 26 Sale despite Plaintiff's demand.

32. As a result, Defendant El-Batrawi and EVmo are in breach of Section 16(b) of the 1934 Act.

33. In the event that Defendant El-Batrawi made other purchases and sales of EVmo stock within the above or any other six-month period resulting in short-swing profits, such transactions are also a breach of Section 16(b) of the 1934 Act requiring disgorgement by him to EVmo.

34. Through such purchases and sales or sales and purchases, Defendant El-Batrawi realized profits the exact amounts which are unknown to Plaintiff, which inure to the benefit of, and are recoverable by, Plaintiff on behalf of EVmo.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.  All short-swing profits realized in violation of Section 16(b) of the 1934 Act, minus any disgorgement previously made, along with appropriate interests and the costs of this action;

B.  Pre-judgment and post-judgment interest on such monetary relief;

C.  The costs of bringing this suit, including reasonable attorney fees; and

D.  All other relief to which Plaintiff may be entitled at law or equity.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1) and (c), Plaintiff hereby demands a jury trial on all the issues in this action so triable of right by a jury.

Date:  New York, New York
       December 9, 2021

                                        STERLINGTON, PLLC

                                        By:    s/Jennifer M. Driscoll
                                        Jennifer M. Driscoll (JD-7089)
                                        228 Park Avenue S # 97956
                                        New York, New York 10003-1502
                                        Tel: (202) 450-9210
                                        jdriscoll@sterlington.net

                                        *Attorney for Plaintiff Nosirrah Management, LLC*